IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTHONY BOYD,                    )
                                 )
        Plaintiff,               )
                                 )
v.                               )        CASE NO. 2:14-CV-1017-WKW
                                 )           (WO – Do Not Publish)
WALTER MYERS, *et al.*,          )
                                 )
        Defendants.              )

## MEMORANDUM OPINION AND ORDER

This is one of seven 42 U.S.C. § 1983 lethal injection challenges pending before the court.  On October 2, 2014, Plaintiff Anthony Boyd ("Boyd"), a death row inmate, filed a complaint challenging the constitutionality of Alabama's lethal injection protocol.  (Doc. # 1.)  Boyd filed an amended complaint on December 1, 2014, asserting the following claims: (1) an Eighth Amendment method-of-execution claim based on the State's substitution of midazolam hydrochloride as the first drug in its three-drug lethal injection cocktail (Count I); (2) an Eighth Amendment claim based on a substantial risk of "maladministration" of Boyd's execution resulting from the inadequate training and qualifications of the execution squad (Count II); (3) an Eighth Amendment claim based on a substantial risk of "maladministration" of Boyd's execution resulting from a deficient execution chamber and equipment (Count III); (4) a Fourteenth Amendment due process claim

based on the secrecy surrounding the State's lethal injection protocol (Count IV); (5) a Fourteenth Amendment equal protection claim based on a future risk that the State will fail to perform, or to perform adequately, the consciousness assessment during Boyd's execution (Count V); and (6) two general claims for declaratory relief (Count VI) and injunctive relief (Count VII).  (Doc. # 21.)  Boyd asserts his claims against Walter Myers, Warden of Holman Correctional Facility, where Alabama's executions take place, Luther Strange, Attorney General for the State of Alabama, and Jefferson S. Dunn, Commissioner of the Alabama Department of Corrections.[1] (Doc. # 21.)

Now before the court are two motions: (1) the State's renewed motion to dismiss based on *Glossip v. Gross*, which was filed on July 13, 2015 (Doc. # 39), and (2) Boyd's motion for leave to file second amended complaint, which was filed on August 13, 2015 (Doc. # 45).  Both motions have been fully briefed and are ripe for disposition.  (Docs. # 43, 44, 46, 48, 49.)  After careful consideration of the parties' arguments and the relevant case law, and for the reasons explained herein, the court finds that Boyd's motion for leave to file a second amended complaint

---

[1]      Kim T. Thomas was the Commissioner of the Alabama Department of Corrections at the time Boyd filed his December 1, 2014 amended complaint.  (Doc. # 21.)  However, since the time of that filing, Jefferson S. Dunn was appointed Commissioner of the Alabama Department of Corrections.  As a result, the court *sua sponte* amended the style of this action to reflect that change. (Doc. # 36.)

(Doc. # 45) is due to be DENIED, and that the State's renewed motion to dismiss (Doc. # 39) is due to be GRANTED.

## I. STANDARDS OF REVIEW

"The decision whether to grant leave to amend a complaint is within the sole discretion of the district court." *Laurie v. Ala. Ct. of Criminal Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001). However, Rule 15 of the Federal Rules of Civil Procedure limits the court's discretion by instructing courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In order to successfully oppose a motion for leave to amend, the opposing party must provide a substantial reason to the court." *Shorter v. Dollar*, No. 3:11-cv-531-WHA, 2012 WL 602357, at *2 (M.D. Ala. Feb. 24, 2012). "Such reasons include 'undue delay, bad faith, dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

A Rule 12(b)(6) motion to dismiss, on the other hand, "tests the legal sufficiency of the complaint." *Polk v. Law Offices of Curtis O. Barnes*, No. 2:10-cv-36-MEF, 2010 WL 1994093, at *1 (M.D. Ala. May 17, 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully."  *Id.*

In considering a defendant's Rule 12(b)(6) motion to dismiss, a district court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff.  *Polk*, 2010 WL 1994093 at *1.  A complaint need not contain "detailed factual allegations" but must include enough facts "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (internal citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

## II.  FACTUAL AND PROCEDURAL SUMMARY

In 1995, Boyd was convicted of capital murder committed during a kidnapping in the first degree and was sentenced to death.  His conviction and sentence have been affirmed on direct review, *see Boyd v. State*, 715 So. 2d 825 (Ala. 1997), *aff'd sub nom. Ex parte Boyd*, 715 So. 2d 852 (1998), *and cert. denied*,

*Boyd v. Alabama*, 525 U.S. 968 (1998), and collateral review, *see Boyd v. State*, 913 So. 2d 1113 (Ala. Crim. App. 2003), *cert. denied*, No. 1030438 (Ala. May 27, 2005); *Boyd v. Comm'r, Ala. Dep't of Corrs.*, 697 F.3d 1320 (11th Cir. 2012) (affirming denial of federal habeas petition), *cert. denied*, *Boyd v. Thomas*, 133 S. Ct. 2857 (2013).

On September 10, 2014, the Alabama Department of Corrections ("ADOC") amended its lethal injection protocol, changing the first drug in its three-drug cocktail to midazolam hydrochloride (from pentobarbital) and the second drug to rocuronium bromide (from pancuronium bromide). The following day, the State informed the court and Boyd of these changes through a motion to set Boyd's execution filed with the Alabama Supreme Court.[2] Boyd filed his complaint in this case less than a month later.

The State filed a motion to dismiss Boyd's complaint on November 10, 2014, but that motion was denied as moot after Boyd filed an amended complaint in accordance with Rule 15 of the Federal Rules of Civil Procedure. (Docs. # 19, 22.) On December 22, 2014, the State moved to dismiss Boyd's amended complaint, and that motion was fully briefed. (Docs. # 23, 25, 28.) Nonetheless, in March 2015,

---

[2] When it became apparent that this proceeding would be stayed until the Supreme Court issued its decision in *Glossip*, the State filed an unopposed motion to hold in abeyance its motion to set Boyd's execution date, which the Alabama Supreme Court granted on March 27, 2015. (Docs. # 33-1, 39.)

before the court had an opportunity to resolve the State's motion, it entered orders staying this case and the six other § 1983 lethal injection cases pending before it until after the United States Supreme Court issued a decision in *Glossip v. Gross*, a § 1983 case that concerned the constitutionality of Oklahoma's lethal injection protocol (which also uses midazolam as the first drug in its three-drug lethal injection option) and the pleading and proof standards for Eighth Amendment method-of-execution claims. (Doc. # 34.) As a result of the stay, the court denied the State's motion to dismiss with leave to refile following a decision in *Glossip*. (Doc. # 34.)

The Supreme Court issued its decision in *Glossip* on June 29, 2015. *See Glossip v. Gross*, 135 S. Ct. 2726 (2015). In rejecting the prisoners' Eighth Amendment method-of-execution claim, the *Glossip* Court held that the prisoners had failed "to identify a known and available alternative method of execution that entails a lesser risk of pain, a *requirement* of all Eighth Amendment method-of-execution claims" and that the prisoners had "failed to establish that Oklahoma's use of a massive dose of midazolam in its execution protocol entails a substantial risk of severe pain." *Id.* at 2731 (emphasis added). In other words, *Glossip* clarified, among other things, that a successful Eighth Amendment method-of-execution claim "requires a prisoner to plead *and* prove a known and available alternative" method of execution that "is feasible, readily implemented,

and in fact significantly reduce[s] a substantial risk of severe pain." *Id.* at 2737−38 (emphasis added) (internal quotation marks omitted).

Following the Supreme Court's decision in *Glossip*, on July 13, 2015, the State filed a renewed motion to dismiss Boyd's amended complaint.  (Doc. # 39.) In that motion, the State argues that all of Boyd's claims are barred by the statute of limitations and that, to the extent any claim is not time-barred, it fails to state a cognizable claim under Rule 12(b)(6).  (Doc. # 39.)  The State further argues that Boyd lacks standing to assert a Fourteenth Amendment equal protection claim, that Boyd is precluded from obtaining relief due to his inequitable and unreasonable delay in bringing this lawsuit, and that Luther Strange should be dismissed as a defendant from this action because he is not a proper party to Boyd's claims.  (Doc. # 39.)

During briefing on the State's renewed motion to dismiss, Boyd moved for leave to file a second amended complaint.  (Doc. # 45.)  Boyd's motion, which includes as an exhibit a proposed second amended complaint, contends that amendment is necessary so that Boyd can include new allegations regarding an available alternative method of execution, as required by *Glossip*, and can "incorporate some additional newly discovered information into his claims."  (Doc. # 45, ¶ 3.)  The State filed an opposition to Boyd's motion for leave to amend but

addressed in detail only one of Boyd's claims – his Eighth Amendment method-of-execution claim (Count I).

## III.  DISCUSSION

Boyd's proposed second amended complaint asserts seven claims: three Eighth Amendment claims (Counts I−III), a Fourteenth Amendment due process claim (Count IV), a Fourteenth Amendment equal protection claim (Count V), and two general claims for declaratory and injunctive relief (Counts VI−VII).  As explained in detail below, the court will not permit Boyd to amend his claims because all of his claims fail as a matter of law, and, therefore, amendment would be futile.  That leaves Boyd's amended complaint before the court, and, for the same reasons the court denied Boyd leave to amend, it will grant the State's motion to dismiss.

### A.    Boyd's Motion to Amend

Count I of Boyd's proposed second amended complaint asserts an Eighth Amendment method-of-execution claim based on the State's switch from pentobarbital to midazolam hydrochloride as the first drug in its three-drug lethal injection cocktail.  Boyd alleges that the "switch to midazolam – a short-acting drug without anesthetizing properties – raises a substantial risk of serious harm to Mr. Boyd, and increases the risk that Mr. Boyd's execution will be botched and that he will very likely suffer needlessly in violation of his Eighth Amendment rights."

(Doc. # 45-1, ¶ 85.)   Boyd further alleges that the State is subjecting him to a substantial risk of serious harm by (1) using an "insufficient, improperly designed and improperly administered procedure for inducing and maintaining loss of consciousness and loss of sensation prior to execution," and (2) using "chemicals that cause severe pain in the process of causing death, in conjunction with chemicals used specifically and for no other purpose than to mask that severe pain."   (Doc. # 45-1, ¶ 87.)   The State contends that amendment of this claim should not be allowed because (1) Boyd unduly delayed in adding a proposed alternative method of execution to his complaint, and (2) Boyd's proposed alternative methods of execution are insufficient to meet the requirements set forth by *Baze* and *Glossip*. (Doc. # 48, ¶¶ 4−9.)

The court is not persuaded by the State's undue delay argument.   The State argues that the "*Baze* standard was never unclear" and that Boyd has always had the burden under *Baze* to identify a feasible and available alternative method of execution.   (Doc. # 48, ¶ 4.)   This is only partially true.   While a prisoner asserting an Eighth Amendment method-of-execution challenge has indeed had the burden since *Baze* to identify and to prove the existence of a feasible and readily available alternative method of execution that significantly reduces a substantial risk of severe pain, *see Baze v. Rees*, 553 U.S. 35, 51−52 (2008), the requirement that such an alternative be specifically pleaded in the complaint was not clear until the Supreme

9

Court's recent decision in *Glossip*.  *See Glossip*, 135 S. Ct. at 2737; *see also* Opinion on Motion for Leave to Amend, Doc. # 195, *Arthur v. Myers*, Case No. 2:11-cv-438-WKW, at 11 (M.D. Ala. Jan. 5, 2015) ("[T]he court does not accept the State's argument that [a known and available alternative method of execution] is a specific pleading requirement set forth by *Baze* that must be properly alleged before a case can survive a motion to dismiss.").  Following the Supreme Court's decision in *Glossip*, which left no doubt that a feasible and available alternative method of execution was a specific pleading requirement for any successful Eighth Amendment method-of-execution claim, Boyd sought leave to amend his complaint to include these allegations less than three weeks after the court lifted the stay of this case.  Boyd's motion is timely.

That being said, the court is persuaded by the alternative reason proffered by the State for disallowing amendment of Boyd's Eighth Amendment method-of-execution claim, namely, Boyd's failure to allege in his proposed second amended complaint a feasible and readily available alternative method of execution that satisfies the mandates of *Baze* and *Glossip*.  As the State correctly notes, the default method of execution in Alabama is lethal injection unless the person sentenced to death affirmatively elects to be executed by electrocution and does so in accordance with the statutory procedures for making such an election. Ala. Code § 15-18-82.1(a)−(b).  If electrocution or lethal injection is deemed unconstitutional

10

by the Alabama Supreme Court or the United States Supreme Court, or if the United States Supreme Court declines to review any judgment by the Alabama Supreme Court or the Eleventh Circuit holding a method of execution to be unconstitutional under the United States Constitution, all persons sentenced to death in Alabama "shall be executed by any constitutional method of execution." Ala. Code § 15-18-82.1(c).

Boyd's proposed second amended complaint identifies a firing squad and hanging as two feasible and readily available alternatives to Alabama's current method of execution. But those two methods are not permitted by statute in Alabama. Thus, implementing them without lethal injection and electrocution first being declared unconstitutional would require a statutory amendment. Moreover, the fact that other States have the option to use those methods of execution does not make them feasible or readily available for use by Alabama. In fact, Boyd's allegations that "other states evaluated and approved [the firing squad and hanging] as method[s] of execution through the legislative process" only belie his argument, as there is no dispute that hanging and the firing squad have not been approved for use as methods of execution by Alabama's legislature. (*See* Doc. # 45-1, ¶¶ 89−90.) Finally, although Boyd's proposed second amended complaint alleges that both hanging and the firing squad would entail a lesser risk of pain than Alabama's current method of execution (*see* Doc. # 45-1, ¶¶ 89−90), these allegations are

11

nothing more than bare-bone legal conclusions unsupported by facts.

Simply stated, Boyd has failed to meet his burden under *Baze* and *Glossip* to plead a feasible and readily available alternative to Alabama's current method of execution, and, consequently, his Eighth Amendment method-of-execution claim fails as a matter of law.  As a result, the amendment Boyd seeks is futile and will not be permitted.[3]

The court reaches a similar conclusion with the remainder of Boyd's claims. An amendment is considered futile when the claim, as amended, would still be subject to dismissal.  *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).  Amendment of Counts II and III of Boyd's proposed second amended complaint would be futile because these claims are time-barred.  "'All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought.'  *Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011) (quoting *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008) (quotation omitted)).  In Alabama,

---

[3]    While the court recognizes that this is Boyd's first attempt to amend his Eighth Amendment method-of-execution claim following the Supreme Court's decision in *Glossip*, it is this very fact that led the court to deny his motion for leave to amend, at least with respect to his method-of-execution claim.  This is because, even with the benefit of *Glossip*, Count I of Boyd's proposed second amended complaint fails to meet his burden under *Baze* and *Glossip* since it proffers two statutorily prohibited methods of execution as feasible and available alternatives to Alabama's current method of execution.  Boyd had the opportunity to present an alternative method of execution that complied with Alabama's current statutory scheme (*i.e.*, another lethal injection method or electrocution) when he filed his motion for leave to amend, but he chose not to do so.

that limitations period is two years.  *Id.*  Claims challenging a method of execution accrue "on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008). Because Boyd's conviction and sentence became final in 1998 when the Alabama Supreme Court denied his petition for a writ of certiorari on direct review, the statute of limitations for his § 1983 claims began to accrue on July 31, 2002, when Alabama changed its default method of execution from electrocution to lethal injection and Boyd became subject to execution by lethal injection, and it expired on July 31, 2004, unless there has been a significant change to Alabama's lethal injection protocol that would restart the statute of limitations clock.

Unlike Count I of Boyd's proposed second amended complaint, which alleges an Eighth Amendment method-of-execution claim, Counts II and III allege Eighth Amendment violations based on the alleged inadequate training and qualifications of the Alabama Department of Corrections's ("ADOC") execution personnel (Count II) and ADOC's alleged deficient execution facilities and equipment (Count III). Neither of these claims, however, has anything to do with the State's switch from pentobarbital to midazolam, and Boyd does not allege anything specific about midazolam in either of these claims.  They are instead general complaints about ADOC's execution facilities and personnel.

Although Boyd includes allegations in his proposed second amended complaint in an apparent attempt to demonstrate the timeliness of his remaining Eighth Amendment claims, none of these allegations salvages these claims.  For example, Boyd alleges that an unidentified ADOC officer at Holman recently told an unidentified inmate that no one at Holman was qualified or certified to lead an execution, that a different unidentified Holman officer stated that the execution team had not run a drill since 2013, that several members of the execution team had recently quit, and that one execution team member had been hospitalized and another was mentally deficient.  Yet, even assuming that these hearsay allegations are true, they do not change the fact that nothing prevented Boyd from challenging the training and qualifications of ADOC's execution personnel or the sufficiency of the execution facilities and equipment (none of which is midazolam-specific) within Alabama's two-year statute of limitations, well before midazolam was introduced into the protocol.  Accordingly, because Counts II and III of Boyd's proposed second amended complaint are time-barred, amendment of those claims is futile and will not be allowed.

The same can be said for Counts IV and V of Boyd's proposed second amended complaint.  Count IV of Boyd's proposed second amended complaint asserts a Fourteenth Amendment due process claim based on the "secrecy" surrounding Alabama's lethal injection protocol, which, Boyd claims, prevents

14

inmates like him from effectively challenging the State's lethal injection protocol. Boyd was on death row as of July 31, 2002, when he became subject to execution by lethal injection rather than electrocution.  Beginning on that date, Boyd could have challenged the secrecy surrounding Alabama's lethal injection protocol and the State's refusal to disclose to him all details about the protocol that will be used to execute him, but he waited more than twelve years to do so.  This claim falls well outside of Alabama's two-year statute of limitations, and the fact that two of the drugs in the protocol were changed in September 2014 does not negate the untimeliness of this claim.  *See Powell*, 643 F.3d at 1305 ("Powell could have challenged the ADOC's 'secrecy' surrounding the method of execution beginning July 31, 2002, as the facts supporting this cause of action should have been apparent to any person with a reasonably prudent regard for his rights. . . . Powell fails to show how his claim about the secrecy surrounding the ADOC's recent change in lethal injection protocol was revived by the ADOC's 2011 switch in drugs."); *Arthur v. Thomas*, 674 F.3d 1257 (11th Cir. 2012) (implicitly affirming the district court's summary dismissal of similar Fourteenth Amendment due process secrecy claim as untimely).[4]

---

[4]      Even if the court were to assume that this claim is timely, amendment would still be futile because this claim fails to pass muster under Rule 12(b)(6).  *See Wellons v. Comm'r, Ga. Dep't of Corrs.*, 754 F.3d 1260, 1267 (11th Cir. 2014) ("We agree with the judgment of the district court. Neither the Fifth, Fourteenth, or First Amendments afford Wellons the broad right 'to know where, how, and by whom the lethal injections drugs will be manufactured,' as well as 'the qualifications

Count V of Boyd's proposed second amended complaint suffers from the same fatal flaw. Count V asserts a Fourteenth Amendment equal protection claim based on the State's failure to perform, or to perform adequately, the consciousness assessment (*i.e.*, the pinch test) during past executions, and Boyd's contention that the State will fail to perform, or to perform adequately, the consciousness assessment during his execution. Yet, Boyd does not allege any specific details of these past executions, such as the name of the executed inmate or the date of the execution, nor does he make any attempt to allege or to otherwise show how this claim falls within Alabama's two-year statute of limitations. Accordingly, because both Counts IV and V of Boyd's proposed second amended complaint are time-barred, amendment of those claims is futile and will not be allowed.

Finally, while the prayer for relief contained in Boyd's proposed second amended complaint seeks both declaratory and injunctive relief, Boyd also seeks such relief through two separate and distinct causes of action. (*See* Doc. # 45-1, Sixth Cause of Action/Declaratory Relief, and Seventh Cause of Action/Injunctive Relief.) It is unnecessary to set forth these types of relief as separate causes of action in the complaint. *See Hamil v. Vertrees*, No. CIV. A. 98-D-508-N, 2001 WL

---

of the person or persons who will manufacture the drugs.'" (quoting *Lewis v. Casey*, 518 U.S. 343, 354 (1996))).

135716, at *3 n.6 (M.D. Ala. Jan. 10, 2001).  Thus, amendment of these "claims" will not be permitted.

**B.**     **The State's Motion to Dismiss**

Having concluded that Boyd will not be permitted to amend his complaint, the court turns to the State's renewed motion to dismiss the amended complaint currently before the court.  For the same reasons that Boyd's proposed amendment was not permitted, the court will grant the State's motion to dismiss.  Boyd's Eighth Amendment deficient training and qualification claim, his Eighth Amendment deficient facilities and equipment claim, and his Fourteenth Amendment due process and equal protection claims (Counts II – V) are time-barred and due to be dismissed.  As to Boyd's Eighth Amendment method-of-execution claim (Count I), statute of limitations notwithstanding, this claim fails to meet the requirements of *Baze* and *Glossip* because Boyd has failed to plead a feasible and available alternative to Alabama's current method of execution that would significantly reduce a substantial risk of severe pain.  Therefore, this claim fails as a matter of law and is due to be dismissed.

## IV.  CONCLUSION

For the reasons stated herein, it is ORDERED as follows:

1.     Boyd's motion for leave to file second amended complaint (Doc. # 45) is DENIED.

2.     The State's renewed motion to dismiss (Doc. # 39) is GRANTED.

A separate final judgment is forthcoming.

DONE this 7th day of October, 2015.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE